**80**

ICG PETROLEUM, INC. and Flying J Petroleums, Inc., Plaintiffs–Appellants,

v.

UNITED STATES DEPARTMENT OF ENERGY and John S. Herrington, Secretary of Energy, Defendants–Appellees.

No. D.C. 109.

Temporary Emergency Court of Appeals.

Submitted on the Briefs.

Decided June 30, 1989.

Judgment Entered July 12, 1989.

Rehearing and Rehearing En Banc Denied Aug. 17, 1989.

Edwin Jason Dryer and Dennis A. Henigan, Foley & Lardner, Washington, D.C. were on the brief, for plaintiffs-appellants.

Thomas H. Kemp, Marc Johnston, and Stephen C. Skubel, U.S. Dept. of Energy, Office of the Gen. Counsel, Washington, D.C., were on the brief, for defendants-appellees.

Before METZNER, PECK and THORNBERRY, Judges.

METZNER, Judge.

Appellants ICG Petroleum, Inc. and Flying J. Petroleums, Inc. ("ICG" and "Flying J") appeal from an order of the District Court for the District of Columbia granting appellee Department of Energy's ("DOE") motion to dismiss appellant's petition for review of the denial of an application for exceptions relief under section 504(a) of the Department of Energy Organization Act ("DOEOA"), 42 U.S.C. § 7194(a) (1983). The dismissal was granted on the ground that the time period for review of such actions had elapsed. Section 3005(e) of the Petroleum Overcharge Distribution and Restitution Act of 1986 ("PODRA"), 15 U.S.C. § 4504(e) (West Supp.1988). We affirm the district court's decision.

ICG and Flying J are small independent refiners of petroleum products. In January 1980, ICG applied to the Department of Energy's Office of Hearings and Appeals ("OHA") for "exceptions" relief from the impact of transfer payments and other regulations established under the Emergency

Petroleum Allocation Act of 1973, 15 U.S.C. §§ 751 et seq. *See* 10 C.F.R. § 211.66–69. In April, 1980, ICG's domestic refining operations were acquired by Flying J. Following the acquisition, ICG and Flying J jointly pursued the application for exceptions relief.

On March 30, 1982, OHA issued a final decision and order denying both ICG and Flying J exceptions relief. *ICG Vista Petroleums, Inc.*, 9 DOE ¶ 81,026 (1982). On April 29, 1982, appellants filed a petition with the Federal Energy Regulatory Commission ("FERC") to review the OHA decision and order. Four and a half years later, FERC affirmed the OHA decision and order on November 10, 1986.

On October 21, 1986, less than three weeks prior to the FERC decision affirming the denial of exceptions relief to plaintiffs, Congress enacted PODRA. 15 U.S.C. § 4501–07. Subsection 3005(e) states as follows:

> "Any review of a final agency action determined under section 503 and 504 of the Department of Energy Organization Act may not be initiated in any court by any person subject to such action after—
> (1) 60 days after the effective date of that action; or
> (2) 90 days after the date of the enactment of this Act, whichever occurs later."

15 U.S.C. § 4504(e). Under subdivision (2), plaintiffs were required to file suit for review of their section 504 request for exceptions relief by January 19, 1987.

On November 6, 1987, approximately ten months after the running of the PODRA time limit for review of section 504 final actions, and about one year after entry of the order sought to be reviewed, plaintiffs instituted this action in the United States District Court for the District of Columbia. On October 19, 1988, District Judge Harold Greene dismissed the complaint for failure to comply with the PODRA limitations period. This appeal followed.

Appellants offer three arguments in support of their contention that the district court erred in dismissing their complaint.

First, they argue that the time period provided in section 3005(e) is inapplicable to their appeal because it was not intended to apply to all cases seeking judicial review of denials of exceptions relief. Appellants urge that the time period was intended to apply only to a narrow class of cases in which the applicant for exceptions relief is also the target of a government enforcement action, and is seeking relief from the regulations alleged to have been violated.

In support of their argument, they point to the language and emphasis of PODRA as a whole, which is primarily concerned with creating mechanisms for the speedy resolution of government civil enforcement actions. *See* 15 U.S.C. §§ 4505(a)–(d).

However, the express language of section 3005(e) states that it applies to *"Any review of a final agency action determined under section 503 or 504 of the Department of Energy Organization Act...."* There is nothing in the legislative history of PODRA which supports appellant's narrow reading of the time period, apart from the fact that it is imbedded in a statute which is primarily concerned with the expeditious resolution of civil enforcement actions brought by the government.

The Supreme Court has consistently held that the ordinary meaning of a statute's language must be regarded as conclusive unless there is a clearly expressed legislative intention to the contrary. *Escondido Mutual Water Co. v. La Jolla Band of Mission Indians,* 466 U.S. 765, 772, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984); *North Dakota v. United States,* 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983); *Consumer Product Safety Comm'n v. GTE Sylvania Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). In addition, the Supreme Court has also held that any limitations provisions in a statute must be strictly construed. *United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d 259 (1979); *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).

We agree with the district court's conclusion that there is no reason to go beyond

the plain meaning of the language contained in section 3005(e) by narrowing the application of the time period to a limited class of section 504 cases.

Second, appellants argue that the application of this time period to them is an unconstitutional denial of due process because they "were given no notice of the new time limit and had no reasonable opportunity to learn of it because it could not be discovered through exhaustive legal research."

All persons are presumptively charged with knowledge of the law. *See North Laramie Land Co. v. Hoffman*, 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1925). However, the Supreme Court recognizes that this presumption "may be overcome in cases in which the statute does not allow a sufficient 'grace period' to provide the persons affected by a change in the law with an adequate opportunity to become familiar with their obligations under it." *Atkins, Comm'r. of the Massachusetts Dept. of Public Welfare v. Parker*, 472 U.S. 115, 130, 105 S.Ct. 2520, 2529, 86 L.Ed.2d 81 (1985) (citing *Texaco, Inc. v. Short*, 454 U.S. 516, 532, 102 S.Ct. 781, 793, 70 L.Ed.2d 738 (1982)). The issue is whether the ninety-day grace period provided by PODRA section 3005(e)(2), 15 U.S.C. § 4504(e)(2), provides the energy companies affected by its new limitations period an adequate opportunity to learn of the existence of the statute and to become familiar with its terms. In *Atkins* the Supreme Court held that a ninety-day grace period prior to a change in a household's food-stamp allotment provided constitutionally sufficient notice. *Atkins, supra* 472 U.S. at 131, 105 S.Ct. at 2529.

When enacting legislation which affects substantial rights, "[g]enerally, a legislature need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." *Texaco, supra* at 532, 102 S.Ct. at 793. The Court emphasized that it is reasonable to expect that property owners be charged with the duty of monitoring statutes that may affect their interests. *Id.* In a dissenting opinion Justice Brennan commented that the Court treated "property owners as businessmen, of whom we do indeed expect the greatest attentiveness to regulatory obligations in the conduct of their business affairs." *Id.* at 547, 102 S.Ct. at 801.

Independent oil refiners, such as the appellants in this case, may also reasonably be expected to be extra attentive to their regulatory obligations in an industry that is as heavily regulated as the oil industry. This is especially true as to the regulations regarding price and allocation controls to which the industry has been subjected for such a long period of time. PODRA's ninety-day grace period in section 3005(e)(2) provides the energy companies who are affected by its provisions with more than an adequate opportunity to learn of the existence of the statute and become familiar with their new obligations.

In addition, appellants' own submissions reveal that they had actual notice of the passage of PODRA on November 5, 1986, which is 75 days prior to the running of the time period, when they received a copy of the October 29, 1986, issue of "Energy Management," a trade publication. Seventy-five days is sufficient time in which to ascertain the provisions of a statute which apparently affects a party's interests. The appellants were not denied their constitutional right to fair notice.

It has been urged that the applicability of the limitation periods violates due process because notice of the enactment of those periods, other than entry in the daily Congressional Record, did not appear until April 1987 with the issuance of the supplement to the United States Code. Therefore, the limitation period should be measured from that date. We need not address this due process argument, since this suit was not filed until November 6, 1987, well after 60 days from the issuance of the supplement.

Finally, appellants argue that the district court abused its discretion in failing to exercise its equitable power by tolling the running of the limitations period. A district court may toll a limitations provision in a statute when "tolling the limitation in

a given context is consonant with the legislative scheme." *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 558, 94 S.Ct. 756, 768, 38 L.Ed.2d 713 (1974). The legislative history of PODRA is inconclusive on this issue. In addition, the Supreme Court has held that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957).

We agree with the district court that there are no mitigating circumstances that would support the exercise of such an eq-uitable power, assuming that such power exists under PODRA. Appellants were expected to be attentive to their regulatory obligations, they had actual notice of the enactment of PODRA and adequate opportunity to learn of the new limitations period.

The order of the district court is affirmed.