Robert BUSH and Sunset Boulevard Car
Wash Corporation, Defendants–
Appellants,

v.

UNITED STATES of America,
Plaintiff–Appellee.

No. 9–107.

Temporary Emergency Court of Appeals.

Argued Nov. 24, 1992.

Decided March 9, 1993.

Kevin J. Leichter, Schuyler M. Moore,
Matthew C. Thompson, Stroock & Stroock
& Lavan, Los Angeles, CA, were on the
brief, for defendants-appellants.

Robin S. Rosenbaum, Thomas Millet,
U.S. Dept. of Justice, Washington, DC,
with whom Stuart M. Gerson, Asst. Atty.
Gen., Washington, DC, and Gilbert Renaut,
Office of General Counsel, U.S. Dept. of
Energy, Washington, DC, were on the
brief, for plaintiff-appellee.

Before GRANT, PECK, and
DAUGHERTY, Judges.

GRANT, Judge:

Defendants Sunset Boulevard Car Wash
Corporation [Sunset] and Robert Bush, its
sole owner, timely appeal from the April
15, 1992 Order of the United States District
Court for the Central District of California
granting the summary judgment motion of
the United States of America and denying
defendants' motion to dismiss the com-
plaint.[1] The court entered judgment in fa-
vor of the government on May 18, 1992.

---

**1.** The underlying civil action from which this
appeal arises was brought against the defendant
Bush, in his individual capacity, as well as
against Sunset. In this appeal, however, the
parties stipulate that the issues herein concern
only the applicability of the limitations provi-
sions of the Petroleum Overcharge Distribution
and Restitution Act of 1986, 15 U.S.C. § 4504,
and that this court may treat Bush and Sunset
alike for purposes of this appeal.

For the reasons stated below, we affirm the determinations of the district court.

## I.

After an audit of the Economic Regulatory Administration [ERA] revealed that Sunset had violated the petroleum pricing regulations by overcharging its customers, the Office of Hearings and Appeals [OHA] issued a Proposed Remedial Order [PRO] on February 28, 1980, ordering Sunset to pay the overcharges. Sunset filed objections. On October 22, 1980, the OHA issued a Remedial Order [RO] affirming the PRO. When Sunset then appealed that order, the Federal Energy Regulatory Commission [FERC] affirmed the RO and, on September 29, 1982, adopted it as a final agency action. Sunset did not appeal the FERC order. Nor did it comply with the terms of the order by repaying the overcharges.

On November 7, 1991, nine years after issuance of the FERC order, the United States brought this action to recover those monies, and the accruing interest thereon, through summary enforcement of the RO. Defendants moved to dismiss the complaint on the basis that the statute of limitations barred the action. They challenge herein the district court's refusal to dismiss the government's case as time-barred pursuant to 15 U.S.C. § 4504(a).

## II.

### A. *Standard of Judicial Review*

■ An appellate court's examination of the summary judgment determination of the district court is a *de novo* review of the record and controlling law. *In re Department of Energy Stripper Well Exemption Litigation*, 968 F.2d 27, 30 (Temp.Emer.Ct.App.1992); *Behm Family Corp. v. U.S. Department of Energy*, 903 F.2d 830, 833 (Temp.Emer.Ct.App.1990). This case, containing no factual disputes and presenting solely a legal issue of statutory interpretation, is appropriate for summary judgment.

### B. *PODRA's Statute of Limitation*

The Petroleum Overcharge Distribution and Restitution Act of 1986 [PODRA], codified at 15 U.S.C. § 4501 *et seq.*, established the procedures for restitutionary distribution of petroleum overcharge funds involving overcharges resulting from alleged crude oil or petroleum product pricing violations under the Emergency Petroleum Allocation Act of 1973 or the Economic Stabilization Act of 1973. *See* Legislative History of Pub.L. No. 99–509, *reprinted in* 1986 U.S.C.C.A.N. 3607, 3868, 3878. Recognizing the need for efficient resolution of civil enforcement actions leading to the final disbursement of restitutionary amounts to injured persons, PODRA created a statute of limitation in 15 U.S.C. § 4504(a):

(1) Except as provided in subsection (b) of this subsection, the commencement of a civil enforcement action shall be barred unless such action is commenced before the later of—

(A) September 30, 1988; or

(B) six years after the date of the violation upon which the action is based.

The statute provides the definitions for the key terms.

(2) For purposes of paragraph (1), the term "commencement of a civil enforcement action" means—(A) the signing and issuance of a proposed remedial order against any person for filing with the Office of Hearings and Appeals of the Department of Energy; or (B) the filing of a complaint with the appropriate district court of the United States.

(3) For purposes of this section, the term "civil enforcement action" means an administrative or judicial civil action by the Secretary under the Emergency Petroleum Allocation Act of 1973 [15 U.S.C.A. § 751 et seq.] or the Economic Stabilization Act of 1970 [12 U.S.C.A. § 1904 note] (or the regulations issued thereunder) for the enforcement of any violation of such Acts or regulations.

Subsection (b) lists exceptions to the time periods established; the parties agree that none of these apply herein.[2] Subsection (c)

---

2. *15 U.S.C. § 4504(b), in full, provides:*

(b) Exceptions

presents the intent of Congress in establishing this statute: With expediency and with the cooperation of the Department of Justice, civil enforcement actions with respect to the "prelitigation cases" must be commenced within the time frames specified.[3] In conjunction with that intent, the next subsection forbids the initiation of any audit or investigation of alleged civil violations after January 1, 1987.[4]

(1) In computing the periods established in subparagraphs (A) and (B) of subsection (a)(1) of this section, there shall be excluded any period—

(A) during which any person who is or may become the subject of a civil enforcement action is outside the United States, has absconded or concealed himself, or is not subject to legal process;

(B) during which facts material to the establishment and maintenance of a civil enforcement action could not be known;

(C) occurring before full compliance with any subpoena or special report order issued to any person under section 772 of this title, and such additional period (not to exceed 12 calendar months) after such compliance for the Secretary to consider the results thereof and commence a civil enforcement action;

(D) during the pendency of any relevant criminal action under the Acts or regulations described in subsection (a)(1) of this section during which a civil enforcement action is held in abeyance as a result of prosecutorial discretion and with or without a stay, and such additional period (not to exceed 12 calendar months) after a final judicial order or dismissal of such criminal action to commence a civil enforcement action;

(E) before the issuance of an order that constitutes final agency action on a request for adjustment from any rule, regulation, or order under section 7194 of Title 42, and such additional period (not to exceed 12 calendar months) to commence a civil enforcement action; or

(F) of extension, to which the Secretary and the defendant have consented in writing, before the expiration of the time periods prescribed in subsection (a)(1) of this section.

(2) The provisions of subsection (a) of this section shall not affect or apply to any civil enforcement action commenced before, on, or after October 21, 1986, and remanded by the Office of Hearings and Appeals, the Federal Energy Regulatory Commission, or the court for further action of any kind.

(3) The provisions of subsection (a) of this section shall not apply to any agency orders issued under the Acts or regulations described in subsection (a)(1) of this section or to regulations issued under this chapter, other than a proposed remedial order subject to this section.

The limitation on review of a final agency action is delineated in subsection (e):

Any review of a final agency action ... may not be initiated in any court by any person subject to such action after—

(1) 60 days after the effective date of that action; or

(2) 90 days after October 21, 1986,

whichever occurs later.

3. 15 U.S.C. § 4504(c), in full, provides:

(c) *Expression of intent*

(1) It is the intent of the Congress that—

(A) the Secretary and the Administrator of the Economic Regulatory Administration shall, to the greatest extent possible and within the time frames specified on September 12, 1986, by such Administrator to the Committee on Energy and Commerce of the House of Representatives, commence civil enforcement actions with respect to all cases known by such Administrator as of October 21, 1986, and designated by such Administrator as "prelitigation cases", unless such an action is found not to be warranted;

(B) the Secretary and such Administrator not delay civil enforcement actions so as to cause the limitation in subsection (a)(1) of this section to apply to any such case;

(C) any negotiations for the purpose of settlement of alleged violations not delay the commencement of a civil enforcement action; and

(D) the Department of Justice cooperate in ensuring that activities necessary, including the enforcement of subpoenas, to commence civil enforcement actions are carried out in a timely manner.

(2) Any failure to comply with the time frames described in paragraph (1)(A) shall not be considered for any purpose in any administrative or judicial proceeding subsequently commenced.

4. 15 U.S.C. § 4504(d), in full, provides:

(d) *End of investigations and audits*

Notwithstanding any other provision of law, the Secretary shall not initiate, after January 1, 1987, any audit or investigation of alleged civil violations of the Acts or regulations described in subsection (a)(1) of this section for the purpose of commencement of any civil enforcement action. Nothing in this subsection shall affect or apply to any audit or investigation conducted with respect to any civil enforcement action commenced (within the limitation established by subsection (a)(1) of this section) before, on, or after October 21, 1986. Nothing in this subsection shall limit the authority of the Secretary to continue any audit or investigation initiated before January 1, 1987.

Finally, subsection (f) requires that the proper level of personnel be maintained "[i]n order to ensure the expeditious, effective, and efficient resolution of all civil enforcement actions (whether or not in administrative or judicial litigation)...."

### III.

### A. *Issue*

We begin by making clear that the final administrative ruling of the FERC is not an issue before this court. Sunset did not initiate review of the September 29, 1982 FERC order within the required time period, and is now clearly barred by 15 U.S.C. § 4504(e) from seeking judicial review of the agency's decision, *see Petrotech Trading Co. v. U.S.*, 985 F.2d 1072 (Temp.Emer.Ct.App.1993); *ICG Petroleum, Inc. v. U.S. Department of Energy*, 883 F.2d 80, 83 (Temp.Emer.Ct.App.1989), *cert. denied*, 493 U.S. 937, 110 S.Ct. 332, 107 L.Ed.2d 321 (1989), even in its defense to the government's enforcement action, *see U.S. v. Metropolitan Petroleum Co., Inc.*, 743 F.Supp. 820, 824 (S.D.Fla.1990).

However, Sunset insists that it is not attempting to obtain judicial review of the RO; rather, it is asserting a statute of limitations defense to the government's attempt to obtain judicial enforcement of the RO. Pointing to the plain language of the statute, the appellant contends that § 4504(a) unambiguously restricts all actions, including any enforcement activity concerning price controls, that are not commenced by the bar date of September 30, 1988. Sunset also notes that "commencement of an administrative action" is not among the exceptions listed in § 4504(b)(1), and argues that, if Congress had intended that the filing of an agency action would toll the statute of limitations on bringing a court action, it would have so provided in that exceptions provision.

According to Sunset, the proper reading of the statute requires that both the administrative PRO and judicial complaint be treated as "civil enforcement actions" that must be commenced within the statutory time limits of § 4504(a). Where, as herein, the judicial complaint was not filed before the bar date, Sunset contends that the action is statutorily barred.

The United States responds that this action began as an administrative action before the bar date and may continue as a judicial action to enforce the administrative final decision at any time. Sunset's continuing violation of the FERC final order, which Sunset did not appeal, requires enforcement of that order. Thus this litigation is an enforcement of the result of the previous litigation, which has been violated.

### B. *Analysis*

This court agrees with Sunset that the language of § 4504 is unambiguous, but disagrees with Sunset's reading of the statute. The limitation of subsection (a)(1), when read with the definition of (a)(3), clearly states that a civil enforcement action, administrative *or* judicial, must be commenced by September 30, 1988 (which is the later date under the facts of this case). Subsection (a)(2) further clarifies that the commencement occurs with *either* the signing and issuance of a PRO *or* the filing of a complaint.[5] In this case the DOE issued a PRO against the defendants on February 28, 1980. Under the plain language of the statute, the action was properly commenced within the statute of limitations.

The legislative history of PODRA's limitation provision repeats and reinforces the function and purpose plainly expressed in the statute itself. Congress intended "that all alleged violations of the applicable law and regulations be pursued fully, fairly, and expeditiously," but did "not want, or intend, by adopting this provision, to allow those who have violated the laws and regulations to escape prosecution." H.R.Conf. Rep. No. 1012, 99th Cong., 2d Sess. 234 (1986), *reprinted in* 1986 U.S.C.C.A.N.

---

5. Since § 4504(a) considers the commencement of an administrative action (i.e., the issuance of a PRO) as one of the two means of tolling the statute, Congress would have no reason to include it as one of the excluded time periods of subsection (b). Appellants' argument on this point is without merit.

3868, 3879. The history presents the definitions of "civil enforcement action" as either an administrative or judicial civil action, and of the "commencement" of a such an action as either an administrative or judicial filing:

> The conference agreement defines ... the term "commencement of a civil enforcement action" to cover a proposed remedial order (PRO) for administrative enforcement and complaints for court enforcement. In the case of a PRO, the conference agreement states that the statute of limitation will toll when the PRO is signed and issued.

*Id.* "[C]oncerned that, long after termination of controls, there are many cases still in the prelitigation stage," through PODRA Congress wanted to encourage the government "to bring these cases to litigation" quickly and to stop the investigation into new cases by January 1, 1987. *Id.* 1986 U.S.C.C.A.N. at 3880.

This court has certainly recognized that PODRA "is primarily concerned with the expeditious resolution of civil enforcement actions brought by the government." *ICG Petroleum,* 883 F.2d at 81. However, even though it urges the efficient culmination of cases, its statute of limitation controls the initiation, rather than the termination, of enforcement proceedings. To that end the statute provides that a "civil enforcement action," either administrative *or* judicial, must be commenced with the issuance of a PRO *or* the filing of a complaint by the bar date of subsection (a)(1).

The regulations of the Department of Energy, specifically Chapter II of Title 10 of the Code of Federal Regulations, which were incorporated into the Code in 1974, expound on civil enforcement actions in more detail. Subpart O establishes the procedures for determining violations of the petroleum price-control regulations and for prosecuting such violations through the issuance of notices, PROs and ROs. It also authorizes the initiation of enforcement actions in court:

> Nothing in these regulations shall affect the authority of DOE enforcement officials in coordination with the Department of Justice to initiate appropriate civil or criminal enforcement actions in court at any time.

10 C.F.R. § 205.190 (1992). Likewise Subpart P, establishing the investigative procedures and sanctions for violations, also contains a provision for judicial action:

> Whenever it appears to the Administrator of the DOE, or his delegates, that any person has engaged, is engaged, or is about to engage in any act or practice constituting a violation of any regulation or order issued under this chapter, the Administrator, or his delegate, may request the Attorney General to bring an action in the appropriate district court of the United States to enjoin such acts or practices....

10 C.F.R. § 205.204 (1992). Thus the regulations authorized the DOE to pursue violators by means of its own administrative procedures or through the judicial actions of the Attorney General. *See U.S. Department of Energy v. West Texas Marketing Corp.,* 763 F.2d 1411, 1414–15 n. 4 (Temp.Emer.Ct.App.1985); *U.S. v. Merit Petroleum, Inc.,* 731 F.2d 901, 905 (Temp.Emer.Ct.App.1984) (DOE's administrative enforcement procedures incorporate authority to initiate judicial enforcement actions); *U.S. v. Thriftyman, Inc.,* 704 F.2d 1240, 1247 (Temp.Emer.Ct.App.1983) (same). Because the 1974 regulations presented the two options for initiating an overcharge violation action, twelve years later PODRA's statute of limitation also incorporated both options in its definition of "commencement of a civil enforcement action."

It is clear, however, that the word "or" in § 4504(a) retains its ordinary disjunctive meaning; there is only one "commencement" of an action. Contrary to Sunset's contention, a commencement is not, and cannot be, both the PRO and the complaint. Indeed, the appellant has an odd concept of what it means to "commence." Black's Dictionary defines "commence" as "to initiate by performing the first act or step; to begin, institute or start." In this case, the government's first step was a PRO. It then followed the proper administrative

procedures in determining that an overcharge violation had been committed, and turned to judicial action solely to enforce the final agency order.

This court is disappointed that the DOE, so lacking in diligence after successfully commencing and concluding a timely administrative civil enforcement action against the defendants, allowed nine years to pass before filing its complaint to collect Sunset's overcharge obligation. Nevertheless, the judicial action was required by Sunset's failure to pay the overcharges it owed. It is the defendants' noncompliance with the final agency order of September 29, 1982, and not the government's delay in enforcing the order, that requires redress. *See Metropolitan Petroleum Co.,* 743 F.Supp. at 824 (Congress' goal of quickly resolving enforcement proceedings would be entirely frustrated if a gasoline seller could fail to comply with the agency order, wait for the government to bring further action to enforce its order, and then attempt to bring review of the agency action in its defense to the enforcement action).

## IV. *Conclusion*

By its issuance of a signed PRO on February 28, 1980, the DOE obeyed the dictates of PODRA's statute of limitation, 15 U.S.C. § 4504(a) requiring the commencement of a civil enforcement action before its bar date. This court therefore holds that the complaint of the United States is not barred by this statute of limitation. The district court order granting summary judgment in favor of the United States is AFFIRMED.